[No. B109984. Second Dist., Div. Five. Feb. 18, 1998.]

LAW OFFICES OF IAN HERZOG et al., Plaintiffs and Respondents, v. LAW OFFICES OF JOSEPH M. FREDRICS et al., Defendants and Appellants.

COUNSEL

William J. Cleary, Jr., for Defendants and Appellants.

Evan D. Marshall for Plaintiffs and Respondents.

OPINION

**GODOY PEREZ, J.**—Defendants and appellants Joseph M. Fredrics and the law office which bears his name appeal from the orders confirming and entering judgment on an arbitration award in favor of plaintiffs and respondents, lawyer Ian Herzog and his law office. For the reasons set forth below, we affirm that order.

### FACTS AND PROCEDURAL HISTORY

Lawyer Joseph M. Fredrics represented Elizabeth Castillo, the plaintiff in an insurance bad faith action. Fredrics associated as cocounsel lawyer Ian Herzog.[1] A jury awarded Castillo a multimillion dollar verdict, which the insurer appealed. Herzog handled the appeal and the matter later settled. When Fredrics disputed Herzog's right to a fee for his appellate work,

---

[1] When we refer to Fredrics, we include, where appropriate, the Law Offices of Joseph M. Fredrics. When we refer to Herzog, we include, where appropriate, the Law Offices of Ian Herzog.

Herzog sued Fredrics. During the course of those proceedings, Fredrics was represented by his own firm.

In January 1996, Herzog and Fredrics stipulated to resolve the matter through binding arbitration and had the case removed from the civil active list, pending a written stipulation to be signed by the parties. Fredrics refused to sign a stipulation unless it stated that an award in his favor would be considered a favorable termination for purposes of a malicious prosecution action, as set forth in *Stanley* v. *Superior Court* (1982) 130 Cal.App.3d 460 [181 Cal.Rptr. 878]. As a result, the action was restored to the civil active list.

On October 1, 1996, Fredrics, representing himself, and lawyer Amy Ardell, representing Herzog, appeared before Judge David Perez. The following colloquy occurred at that hearing: "Ms. ARDELL: Your Honor, we would like to enter into a stipulation here in court and have you so order it. We've tried this before, but I think maybe we can do it now. We would agree to a binding arbitration. There will be no limitation on the amount of recovery. The stipulation for binding arbitration will not be—is not to be considered a waiver by Defendants—Mr. Fredrics—of his right to pursue a malicious prosecution action if the claim is otherwise appropriate. [¶] Plaintiffs agree that we'll not raise the defense that because it's an arbitration, he cannot pursue a subsequent cause of action for malicious prosecution, which is not to say that Plaintiffs agree that such a cause of action is appropriate, but we will not raise that defense. We waive that defense. [¶] THE COURT: Okay. [¶] Ms. ARDELL: Okay. And we agree to pick an arbitrator between ourselves within 14 days and, if we cannot agree, we would ask the Court to assist us and select an arbitrator for us within 14 days. [¶] *And there is no need to have a written stipulation between us. This vocal agreement on the record would be sufficient if the Court so orders.* [¶] THE COURT: All right. [¶] MR. FREDRICS: *So stipulated.*" (Italics added.)

Herzog and Fredrics agreed that lawyer Matthew B. F. Biren would serve as arbitrator. The arbitration hearing was held November 19, 1996. When the hearing began, the arbitrator asked whether he was correct that his decision would be binding. Lawyer Lee Feldman of Fredrics's law firm told the arbitrator that he was correct. That same day, after the hearing ended, the arbitrator prepared a written award in favor of Herzog, finding that Fredrics owed him fees of $62,500, plus costs and prejudgment interest. The award noted that the parties had stipulated to binding arbitration.

On December 18, 1996, Fredrics filed a request for a trial de novo, contending that he and Herzog had agreed to binding arbitration only if the

"relief granted was pursuant to Plaintiff's complaint and Defendants [*sic*] Answer, as agreed to by the parties. If not, the Arbitration would be non-binding. Relief granted violated stipulation and was based on non-existent cause of action, and therefore non-binding [*sic*]."

Also on December 18, 1996, the arbitrator prepared a supplemental award, granting Herzog costs and prejudgment interest of $24,888.96, for a total award of $87,348.96. As part of his 'supplemental award, the arbitrator recounted numerous inappropriate ex parte phone calls by Fredrics since the date of the original award. During those conversations, Fredrics apparently questioned both the arbitrator's findings and his impartiality, accusing the arbitrator of a previously undisclosed relationship with Herzog or Ardell. Fredrics also threatened to have the arbitrator investigated and said he would disparage the arbitrator throughout the legal community. The arbitrator denied any prior relationship with Herzog or Ardell.

On December 23, 1996, Herzog filed a petition with the trial court asking that it confirm the arbitrator's award. Fredrics opposed the petition, contending that, despite his stipulation of October 1, 1996, the arbitration which took place had been a nonbinding, judicial arbitration. Fredrics argued in his opposition brief that, during the October 1 hearing, he and Ardell "advised the Court that they would submit to binding arbitration, <u>subject once again to reaching an agreement on the specific terms of the submission.</u>" (Original emphasis.) Fredrics repeated this contention in his accompanying declaration. Since such an agreement was never reached, the arbitration was not binding, he argued. He also said in his declaration that he was out of the room when the arbitration hearing began and did not authorize Feldman to stipulate to binding arbitration. Feldman said in a declaration that he "assumed" a written stipulation had been prepared in accordance with Fredrics's understanding of what transpired at the October 1, 1996, court hearing. He too said that Fredrics was out of the room when the arbitration began and Feldman agreed the arbitrator's decision would be binding.

Fredrics also contended that the order sending the matter to arbitration was void as in excess of the court's jurisdiction since a written agreement is needed before the court can compel contractual arbitration. As a result, the parties either in fact or in effect agreed to nonbinding, judicial arbitration. (Code Civ. Proc., § 1141.10 et seq.)[2]

Based on Fredrics's October 1, 1996, stipulation to binding arbitration, the court confirmed the arbitration award on February 4, 1997, pursuant to the

---

[2]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

statutory procedures applicable to contractual arbitration awards (§ 1287.4) and entered judgment for Herzog according to the terms of the award. Fredrics filed a timely notice of appeal.

## DISCUSSION

■ California law provides for two kinds of arbitration—private contractual arbitration, governed by title 9 of part 3 of the Code of Civil Procedure (§ 1280 et seq.) and judicial arbitration under the Judicial Arbitration Act. (§ 1141.10 et seq.) Judicial arbitration is a creature of statute. " '[T]he system it describes is neither judicial nor arbitration. The hearing is not conducted by a [sitting] judge, and the right to a trial de novo removes the finality of true arbitration. "Extrajudicial mediation" would be [a more apt term].' [Citation.]" (*Parker* v. *Babcock* (1995) 37 Cal.App.4th 1682, 1686 [44 Cal.Rptr.2d 602].)

The statutes governing contractual arbitration provide for two distinct kinds of proceedings: the specific enforcement of an agreement to arbitrate (§§ 1281-1281.95) and for the enforcement of written awards in disputes which were arbitrated based on either oral or written agreements. (§§ 1280, subd. (b), 1285-1287.6; *Horn* v. *Gurewitz* (1968) 261 Cal.App.2d 255, 258 [67 Cal.Rptr. 791].) Under the former, one party to a written arbitration agreement may petition the court for an order compelling the other party to arbitrate pursuant to that agreement. (§§ 1281, 1281.2.) The award enforcement procedure permits a petition to confirm the award (§ 1285) and the entry of judgment upon the confirmed award. (§ 1287.4.)

While the statutes permit the courts to specifically enforce only written agreements to arbitrate (*Valsan Partners Limited Partnership* v. *Calcor Space Facility, Inc.* (1994) 25 Cal.App.4th 809, 816 [30 Cal.Rptr.2d 785]), once the parties have arbitrated and a written award is made, the courts can enforce the award even if the underlying agreement to arbitrate were oral. (§§ 1280, 1281, 1281.2, 1285, 1286, 1287.4; *Horn* v. *Gurewitz, supra*, 261 Cal.App.2d at pp. 258-259.)

■ Fredrics does not dispute that, under *Horn* v. *Gurewitz, supra*, 261 Cal.App.2d 255, the court could enforce a written award even if the arbitration were the result of an oral agreement. He instead contends that since the courts can only grant a petition to compel arbitration based on a written agreement, the October 1, 1996, order to arbitrate was void because it was

based on an oral stipulation.[3] Because the order to arbitrate was void, he contends the resulting award was too. Based on principles of rescission due to mutual mistake, Fredrics argues this somehow placed the parties back in a position where they agreed to nonbinding judicial arbitration.[4]

We disagree with these contentions. While the statutes permit the courts to compel arbitration based only on a written agreement, nothing prevented Fredrics from waiving his rights under those provisions. (Civ. Code, § 3513 ["Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."].) That is precisely what Fredrics did when he agreed that the court should order arbitration and that no written stipulation was needed.

Closely related to Fredrics's waiver of his rights under section 1281.2 is the doctrine of judicial estoppel.[5]  ▪  Under that doctrine, a party who has taken a particular position in litigation may, under some circumstances, be estopped from taking an inconsistent position to the detriment of the other party. (*Ng* v. *Hudson* (1977) 75 Cal.App.3d 250, 258 [142 Cal.Rptr. 69], overruled on other grounds by *Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 574, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298].) The position must be clearly inconsistent so that one necessarily excludes the other. This form of estoppel is "of vague application" and is often held inoperative. It cannot be invoked where the position first assumed was taken due to

---

[3]Fredrics has abandoned his challenge to the terms of the October 1 stipulation, based on his assertion that the stipulation was conditioned upon reaching a later, written agreement with Herzog. The futility of that argument is easily demonstrated by the terms of the stipulation itself. As Ardell told the court, and as Fredrics himself agreed, ". . . there is no need to have a written stipulation between us. This vocal agreement on the record would be sufficient if the Court so orders."

Further, the arbitration award, which was served November 20, 1996, states that the parties stipulated the award would be binding. Fredrics did not challenge that statement until his December 18, 1996, request for trial de novo, but nowhere in that request did Fredrics assert that a written agreement was a prerequisite to binding arbitration. Instead, his only challenge to the binding effect of the award was his contention that the relief requested exceeded the scope of the stipulation. Had he in fact been surprised to learn the award was binding because no written agreement was ever reached, we expect he would have objected immediately on that ground.

[4]He also contends the arbitration was judicial, not contractual, because: the award's caption stated it was pursuant to section 1141.10; the arbitrator filed his award with the court, as is required under the judicial arbitration rules (§ 1141.23); the court set a status conference and trial date after ordering arbitration; and the arbitrator was an unpaid volunteer. Even if the parties intended judicial arbitration, however, it is clear that they intended it also be binding. We need not consider this issue, however, because Fredrics's appeal rises or falls on his contention that the order for contractual arbitration was void.

[5]We asked for and received supplemental letter briefs from the parties on the waiver and judicial estoppel issues.

ignorance or mistake and is often limited by the requirement that permitting the change of position would be unjust to the other party. (*Prilliman* v. *United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 960 [62 Cal.Rptr.2d 142].)

Many of the decisions which have invoked the doctrine do so when the party sought to be estopped successfully obtained some judicial relief based on a position which that party later seeks to change. (*Schulze* v. *Schulze* (1953) 121 Cal.App.2d 75, 83 [262 P.2d 646] [Husband in divorce action relied on validity of Illinois divorce judgment to obtain relief. He could not obtain relief by relying on its validity then later contend the judgment was invalid to avoid making support payments.]; *Alexander* v. *Hammarberg* (1951) 103 Cal.App.2d 872, 878-879 [230 P.2d 399] [defendant who obtained severance from codefendant on ground they were not joint tortfeasors could not later contest sufficiency of evidence on ground they were in fact joint tortfeasors]; *Sacramento etc. Dist.* v. *Pac. G. & E. Co.* (1946) 72 Cal.App.2d 638, 649 [165 P.2d 741] ["having successfully maintained" a position below, appellant could not later take a contrary position].)

■ We hold that the judicial estoppel doctrine is applicable given the facts of this case. As the court stated in *Alexander* v. *Hammarberg, supra*, 103 Cal.App.2d at page 879: "These two positions are entirely inconsistent. The courts will not recognize or tolerate such tactics. A party cannot thus 'blow hot and cold.' [Citations.] The courts would be impotent indeed if they were compelled to approve such duplicity. Under elementary principles, even if the point were sound, which it is not, [appellant] has waived or is estopped from successfully urging it."

Fredrics orally stipulated in open court that the parties could be ordered to arbitration, expressly stating that no written stipulation was required. The court granted that order. The parties selected an arbitrator, prepared for the hearing, then conducted that hearing. A written award was prepared. As stated in footnote 3, *ante*, Fredrics never raised the validity of the court's order as an issue until Herzog filed his petition to confirm the award. Fredrics's argument squarely contradicts his stipulation. To grant him the relief he seeks would work a great injustice on Herzog, who relied on the stipulation to his detriment by going through with the arbitration in the belief it would be binding.

Fredrics has raised only one argument against application of the waiver and judicial estoppel doctrines—that the lack of a written agreement to arbitrate went to the court's subject matter jurisdiction, which can never be waived or conferred by estoppel. He has confused subject matter jurisdiction with acts in excess of the court's jurisdiction, however.

■ The principle of subject matter jurisdiction relates to a court's inherent authority to deal with the case or matter before it. In contrast, a court acts in excess of jurisdiction where, even though it has subject matter jurisdiction, it has no jurisdiction or power to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites. (*Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1087-1088 [56 Cal.Rptr.2d 386].) ■ The doctrines of waiver and estoppel apply to acts in excess of a court's jurisdiction. (*Id.* at p. 1088; *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1269 [284 Cal.Rptr. 18].) Under section 1281.2, the court had subject matter jurisdiction to determine whether the parties could be ordered to contractual arbitration. (*Valsan Partners Limited Partnership* v. *Calcor Space Facility, Inc.*, *supra*, 25 Cal.App.4th at p. 816; *Office & Professional Employees Union* v. *Sea-Land Service, Inc.* (1979) 90 Cal.App.3d 844, 847 [153 Cal.Rptr. 621].) If the court decided this question incorrectly, its error was committed in the exercise of its jurisdiction. (*Fischer* v. *Superior Court* (1930) 105 Cal.App. 466, 470 [287 P. 556].)

Accordingly, we alternatively hold under the doctrines of waiver and judicial estoppel that Fredrics may not contend that a written arbitration agreement was required before the court could order him to arbitrate with Herzog. Since that contention is the linchpin of his appeal, we will affirm.

## DISPOSITION

The order confirming the arbitration award for Herzog and the judgment entered upon that order are affirmed. Respondents, Herzog and the Law Offices of Ian Herzog, to recover their costs on appeal.

Turner, P. J., and Grignon, J., concurred.